IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRE HARRELL, | : | Civil No. 1:20-CV-01156 |
| Plaintiff, | : | |
| v. | : | |
| ALLESHA GRADY, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion to dismiss the complaint filed by nine of the ten named defendants. (Doc. 28.) Plaintiff Tre Harrell ("Plaintiff") was previously a parolee and had his parole revoked in 2018. (Doc. 16.) It is the details of this parole revocation that are the basis for this 42 U.S.C. § 1983 action. He is self-represented in this action. Because the nine parole board member defendants have absolute immunity, their motion will be granted and all claims against them will be dismissed with prejudice.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 in July of 2020. (Doc. 1.) Following an initial screening under 42 U.S.C. § 1915(e)(2)(B)(ii), this court dismissed the complaint, but provided Plaintiff time to file an amended complaint in August of 2021. (Doc. 12.)

1

In October of 2021, Plaintiff filed an amended complaint naming ten defendants: (1) Allesha Grady ("Grady"), Supervising Parole Agent for Pennsylvania Department of Probation and Parole; (2) Audrey L. Donald ("Donald"), Hearing Examiner for the Pennsylvania Board of Probation and Parole; (3) Chad L. Allensworth ("Allensworth"), Hearing Examiner for the Pennsylvania Board of Probation and Parole (4) A. Moscatto ("Moscatto"), Chief Hearing Examiner for the Pennsylvania Board of Probation and Parole; (5) Theodore A Johnson ("Johnson"), Board Member of the Pennsylvania Board of Probation and Parole; (6) M. Koch ("Koch"), Board Member of Pennsylvania Board of Probation and Parole; (7) C. Fox ("Fox"), Board Member of Pennsylvania Board of Probation and Parole; (8) Leo Dunn ("Dunn"), Board Member of Pennsylvania Board of Probation and Parole; (9) M. Barden ("Barden"), Board Member for the Pennsylvania Board of Probation and Parole; and (10) Scott Woolf ("Woolf"), Secretary for the Board of Pennsylvania Board of Probation and Parole.  (Doc. 16.)

The complaint alleges that on May 6, 2017, Plaintiff was released on Pennsylvania state parole on an approved home plan in Philadelphia.  (*Id*., ¶ 17.) On March 25, 2018, he was arrested in Atlantic City, New Jersey by Atlantic City police officers and detained in the Atlantic County Justice Facility for a warrant issued by the Pennsylvania Board of Probation and Parole.  (*Id*., ¶ 18.)  He was

extradited to Pennsylvania on April 9, 2018 and held at State Correctional Institute Graterford ("SCI-Graterford") pending disposition of the alleged parole violations. (*Id.*, ¶ 19.) On April 12, 2018, non-moving Defendant Grady served a notice of charges and hearing concerning his alleged violations. (*Id.*, ¶ 20.) Plaintiff alleges that Defendant Grady attempted to coerce him into signing a form which would waive his rights to a preliminary hearing, a violation hearing, and the representation of counsel at these hearings, and that he refused to sign the waiver. (*Id.*) Plaintiff alleges that of the forms received, he only signed the section concerning his admission, but did not waive his right to a hearing. (*Id.*) He then alleges that Defendant Grady forged his signature on the form waiving his right to a preliminary hearing, violation hearing, and the representation of counsel at these hearings. (*Id.*, ¶ 21.)

Plaintiff alleges that on April 16, 2018, Defendant Donald conducted a preliminary hearing/detention hearing report accepting the unsigned or forged waiver form and determined that Plaintiff waived his right to a preliminary hearing scheduled for April 20, 2018. (*Id.*, ¶ 22.) Plaintiff did not have a preliminary hearing. (*Id.*, ¶ 24.) Plaintiff alleges that on April 30, 2018, he sent a letter to the parole staff at SCI-Graterford indicating he had not waived his right to a preliminary hearing. (*Id.*, ¶ 25.) After being informed by a member of the parole staff that she received a waiver signed by him waiving his right to such a hearing,

he wrote the Pennsylvania Board of Probation and Parole explaining that he had not signed the waiver. (*Id*., ¶¶ 26–27.)

On May 18, 2018, Plaintiff was still housed at SCI-Graterford and received a misconduct for threatening an employee or their family with bodily harm, using abusive obscene, or inappropriate language, and refusing to obey an order, and was sent to the restricted housing unit. (*Id*., ¶¶ 28, 29(b)[1].) On May 21, 2018, Plaintiff was found guilty of the misconduct charge. (*Id*., ¶ 29(a).) On May 22, 2018, a staff member from SCI-Graterford Parole sent notification to the Pennsylvania Board of Probation and Parole that Plaintiff had received the misconduct. (*Id*., ¶ 29(b).)

Plaintiff alleges that on June 4, 2018, Defendant Allensworth accepted an unsigned or forged violation hearing and counsel waiver form, fabricated a hearing report by falsely claiming that Plaintiff was discharged from a community correction center as a result of no longer being in good standing with the Board, had committed disciplinary infractions involving assaultive behavior, and revoked his parole. (*Id*., ¶ 30.) Plaintiff alleges that on June 12, 2018, Defendant Moscatto did the same. (*Id*., ¶ 31.) On July 6, 2018, the Pennsylvania Board of Probation

---

[1] There are two paragraphs identified as 29. (Doc. 16, p. 6.) Therefore, the court uses (a) and (b) to differentiate between the two.

and Parole decided to recommit Plaintiff to a state correctional institution due to the misconduct he received. (*Id.*, ¶ 32.)

Plaintiff alleges that he appealed the determination on July 13, 2018. (*Id.*, ¶ 33.) In November and December, Defendants Koch, Fox, and Johnson voted to reverse the July 6, 2018 decision and release Plaintiff. (*Id.*, ¶¶ 35–37.) Plaintiff alleges that instead of being released based on the votes of Defendants Koch, Fox, and Johnson, the Board of Probation and Parole rendered a decision to rescind board actions recorded on July 6, 2018 due to new information, and reaffirm board action taken on April 18, 2018. (*Id.*, ¶ 39.)

Plaintiff alleges that on December 10, 2019, a memo was faxed to State Correctional Institute Rockview[2] ("SCI-Rockview") to process Plaintiff for immediate release. (*Id.*, ¶ 40.) However, on December 11, 2019, a memo was faxed to the Pennsylvania Board of Probation and Prole showing that Defendant Johnson had changed his vote on the administrative appeal. (*Id.*, ¶ 41.) Plaintiff alleges that then Defendants Dunn, Fox, and Barden voted to affirm the July 6, 2018 determination. (*Id.*, ¶¶ 42–45.) Plaintiff alleges that Defendant Woolf then transmitted the decision to affirm the July 6, 2018 determination.

---

[2] Plaintiff was transferred to SCI-Rockview on August 14, 2018 and released from confinement on July 9, 2020. (Doc. 30, pp. 1–2.)

5

The nine board member defendants moved to dismiss the complaint on June 9, 2022. (Docs. 28, 29.) Plaintiff filed two briefs in opposition in June and July of 2022. (Docs. 31, 32.) Defendants did not file a reply. The motion is now ripe for the court to address.

Defendant Grady answered the complaint on June 13, 2022, and did not join the motion to dismiss. (Doc. 29.)

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Gaterford and SCI-Rockview, which are both located in within this district. *See* 28 U.S.C. § 118(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting

*Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

The court will dismiss the claims against the nine board member defendants because they have absolute immunity in their actions.

"The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020). "Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the

Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware*, 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). There are two kinds of immunity recognized in the context of § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled to only qualified immunity, public officials who perform "special functions" are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz*, 438 U.S. at 512).

A functional approach is used to determine whether absolute or qualified immunity applies. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). Probation and parole officers perform some functions as to which absolute immunity applies and other functions as to which only qualified immunity may apply.

"[P]robation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties." *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989).  Examples of adjudicatory duties by probation and parole officers include: "(1) hearing evidence; (2) making recommendations as to whether to parole a prisoner; or (3) making decisions whether to grant, revoke or deny parole." *Mills v. Martinez*, 1:CV-04-0871, 2008 WL 763579, at *4 (M.D. Pa. Mar. 20, 2008) (citing *Breslin v. Brainard*, No. 01–CA–7269, 2002 WL 31513425, at *7 n. 10 (E.D. Pa. 2002)).

Conversely, qualified immunity applies to actions taken by probation and parole officers in their executive or administrative capacities, and then only if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable officer would have known.  *Id.*; *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986).  "[T]he general responsibilities of a parole or probation officer" are among the many functions of probation and parole officers that are considered executive or administrative functions.  *Breslin*, 2002 WL 31513425, at *7 n.10; *see also Heilman v. T.W. Ponessa & Assocs.*, No. 4:07-CV-1308, 2008 WL 275731, at *8 (M.D. Pa. Jan. 30, 2008) ("The allegations against the probation officers in this case—that they supervised Heilman's probation, investigated his compliance with probation conditions, and issued the probation violation that led to his arrest—are executive or administrative acts."), *aff'd on other grounds*, 2009

WL 82707, at *1 (3d Cir. Jan. 14, 2009); *Shaw v. Thomas*, No. CIV. 4:CV-04-1217, 2005 WL 2035364, at *3 (M.D. Pa. Aug. 22, 2005) (concluding that the computation of the amount of prior sentence credit due to the plaintiff was not a function protected by absolute immunity).

Here, the alleged actions of the nine parole board member Defendants all pertain to the decision of whether or not to revoke Plaintiff's parole. These are adjudicatory actions and are subject to absolute immunity. As such, all claims against the nine parole board member Defendants will be dismissed with prejudice.

The court notes that Defendants also argued that 42 U.S.C. § 1983 was not the appropriate avenue to challenge the parole determination under *Heck v. Humphrey*, 512 U.S. 477 (1994), and that their determination to revoke Plaintiff's parole prior to release did not violate a liberty interest. (Doc. 30.) However, since absolute immunity applies to the alleged actions by moving Defendants, the court is not required to address these additional arguments.

## Conclusion

For the foregoing reasons, all the claims raised against the nine parole board Defendants will be dismissed with prejudice. Defendant Grady is the sole remaining defendant in the action. She answered Plaintiff's complaint on June 13, 2022. The court will set appropriate case management deadlines for the case to proceed. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: February 15, 2023